**Janice M. GORMAS, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. L87–56–CA5.**

United States District Court, W.D. Michigan, S.D.

May 19, 1989.

---

Patrick A. Aseltyne, Lansing, Mich., for plaintiff.

Michael Shiparski, Asst. U.S. Atty., Grand Rapids, Mich., for defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

Plaintiff is a former recipient of social security disability benefits. She seeks judicial review of the Secretary of Health and Human Services order which requires her to refund overpaid benefits in the amount of $20,281.20. Both parties have filed cross-motions for summary judgment. United States Magistrate Joseph G. Scoville evaluated these motions and, on January 18, 1989, issued a Report and Recommendation, recommending the Secretary's decision be set aside. Both parties have filed objections.

The Court notes preliminarily that Magistrate Scoville's 19–page Report and Recommendation is well-reasoned and well-written. It is incorporated herein by reference as the Court confines its discussion to issues raised by the parties' objections.

I

Plaintiff has suffered from and, on May 24, 1978, was awarded disability benefits for, "systemic lupus erythematosis with anemia and lupus nephritis." The Secretary's final decision includes a determination that plaintiff's disability ceased in August, 1978. This determination is based essentially on the fact that plaintiff returned to work at this time, as she was feeling better. Magistrate Scoville has recommended this determination be reversed because not supported by substantial evidence of medical improvement, as required by 42 U.S.C. § 423(f)(1). The Secretary objects, asserting medical evidence and laboratory findings are not essential where improvement in the symptoms and signs of the impairment manifest cessation of the disability. 20 C.F.R. § 404.1594(b)(1).

■ The Secretary's point of contention is actually beside the point. When plaintiff returned to work, she promptly informed the Social Security Administration (SSA). Instead of viewing this as a basis for terminating benefits, SSA informed plaintiff by letter dated January 25, 1979, that she was deemed to have begun a nine-month "period of trial work" in August 1978. Under 42 U.S.C. § 422(c), work done by plaintiff during a trial work period cannot be used as evidence that her disability had ceased during such period. *McDonald v. Bowen*, 818 F.2d 559, 564 (7th Cir.1986); *Sigmon v. Califano*, 617 F.2d 41, 43 (4th Cir.1980). The purpose of this limitation is to encourage disability beneficiaries to work toward rehabilitation by assuring them that work done during a trial work period will not prejudice their disability determination. *Id.* Yet, contrary to this statutory limitation and its purpose, the Secretary's determination that plaintiff's disability ceased in August of 1978 appears to have been based exclusively on the fact that she returned to work and, for five months, satisfactorily performed her duties. Excluding this "inadmissible evidence," there is practically no evidence, medical or otherwise, to support the Secretary's determination.[1] According-

---

1. The Secretary argues this limitation does not apply because SSA was not actually obliged to grant plaintiff a trial work period in the first place. SSA can hardly be permitted to once grant a trial work period, taking advantage of its purpose to encourage rehabilitative efforts, only to later revoke the same so as to recover benefits paid after the time when, during the

ly, the Court hereby adopts Magistrate Scoville's conclusion that the Secretary's determination is not supported by substantial evidence and should be set aside.[2]

## II

Based on the determination that plaintiff's disability had ceased in August, 1978, the Secretary concluded that all benefits received thereafter were overpaid benefits subject to recovery by SSA. The Secretary also concluded that no part of the recovery should be waived because plaintiff was "not without fault." Plaintiff was found to have been at fault in that she continued to accept benefits which she knew or could have been expected to know were "incorrect"—inasmuch as she knew in August of 1978 that her impairment was no longer disabling. Magistrate Scoville recommends this conclusion be reversed. In his opinion, based on substantial evidence in the record, plaintiff cannot have been expected to know continued benefits were incorrect before August 25, 1980. Both parties object to this finding.

The Secretary's position is that plaintiff, an intelligent, educated woman, should be held responsible for all payments received after she sensed she was no longer disabled, i.e., when she voluntarily discontinued dialysis treatment and returned to work. This position is flawed in two respects.

First, it assumes the continuation, severity and cessation of plaintiff's impairment were readily discernible by her. It does not appear plaintiff's lupus condition is analogous to a broken or paralyzed limb which is, even to a lay person, manifestly disabling at one time, but sufficiently functional to enable work at some defined later time. And although plaintiff, with the benefit of hindsight, believes she was blessed with a miraculous cure in August, 1978, this impression does not appear to have been firmly established at that time. In her May 9, 1979 "report of work activity," plaintiff indicated her impairment continued to affect her ability to work by reducing her energy level and making concentration difficult.

Furthermore, plaintiff's treating physician, Martin F. Jones, M.D., described her prognosis in August, 1978 as "very guarded." He indicated that she returned to work without his permission and despite his warning that her condition, apparently in remission, continued to be dangerous. Dr. Jones' testimony thus suggests that in August, 1978, plaintiff's hopes and improved feelings notwithstanding, she had strong reasons to doubt that her impairment had ceased to be disabling.

A second flaw in the Secretary's position is its neglect of the fact that "disability" is an amorphous term of art, difficult of precise definition. The ever-growing body of code law, regulations, and case law in this area testifies to its complexity and the perceived need to establish objective criteria by which to ascertain entitlement to benefits. Yet, here, the Secretary asks the Court to ignore the rule that beneficiaries are not presumed to know every arcanum of social security law, *Peeler v. Heckler*, 781 F.2d 649, 653–54 (8th Cir.1986); to ignore the customary reliance upon objective criteria; to ignore the fact that plaintiff had just been found to be disabled in May, 1978; and to find that plaintiff was not entitled to benefits after August, 1978, because she can be expected to have subjectively known in her heart that she was no longer "disabled."

The Secretary's position stems, it seems, from a misunderstanding of the word, "incorrect." Plaintiff is said to have

---

period, the disability appears, with the benefit of hindsight to have ceased. The Secretary's position offends the Court's sense of fair play and justice, would frustrate congressional purpose, and is summarily rejected.

**2.** Magistrate Scoville further recommends that plaintiff's entitlement to benefits be deemed to have ceased in July, 1979, "three months after the end of her successful trial work period." See 42 U.S.C. § 423(a)(1)(D). This recommendation is troublesome inasmuch as plaintiff worked for only five months and can only arguably be said to have successfully completed her trial work period. Nonetheless, neither party has objected to this recommendation and it, too, is adopted.

been at fault for having received benefits which she could have been expected to know were incorrect. 20 C.F.R. § 404.507(c). Correctness of payments received can hardly be deemed to be merely a function of the beneficiary's subjective impression as to whether he or she is disabled. Logic compels the conclusion that "correctness" means agreement between benefits received and benefits authorized. Benefits received are incorrect if they are greater than, or extend beyond, those authorized by the Secretary after application of the governing rules and regulations. Can plaintiff be expected to have known that benefits received after she returned to work were not authorized?

Consider the facts. Plaintiff was found to be disabled and was initially awarded benefits in May, 1978. It is undisputed that, since that time, she kept SSA properly informed of her employment and health status. In January, 1979, SSA informed her that her disability was deemed to be continuing and her claim would be reviewed in April, 1979. Pursuant to this review, she reported in May, 1979 that she had stopped working in December, 1978 and that her impairment continued to affect her ability to work.[3] Plaintiff received no response to this report and, as she continued to receive benefits, presumed she was still deemed disabled. Thereafter, plaintiff's next communication took place in August, 1980, when she participated in a disability evaluation interview with Thomas Foster. She apparently told Foster she believed her disability had ceased in August, 1978. He received the information and submitted it for review without giving plaintiff any preliminary indication as to her continuing entitlement to benefits. In the meantime, plaintiff continued to receive benefits. Finally, in November, 1980, SSA sent plaintiff a letter containing the following language:

[I]t appears you gained the ability for substantial gainful work in September,

1978, and your benefits will have to be stopped.

. . . .

This is not a notice of formal decision on your claim. Social Security will notify you when the formal decision is made. If they determine you are no longer disabled, you will still receive benefits for the month in which your disability ended and for each of the two months after that month.

■ This represents the first SSA communication to plaintiff suggesting that continued benefits may not be authorized. Only after receipt of this letter can plaintiff reasonably be expected to have known that further payments were or may be "incorrect." Prior to the letter, irrespective of plaintiff's knowledge or impression about her own condition, she had no reason to doubt that payments received were authorized by SSA. In the face of information plaintiff had provided, SSA's communications and silence had in fact served to confirm and justify her impression that continued benefits were authorized. Under such circumstances, plaintiff cannot be said to have been at fault. See e.g., *Peeler v. Heckler*, 781 F.2d 649 (8th Cir.1986); *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037 (2nd Cir.1984); *Rini v. Harris*, 615 F.2d 625 (5th Cir.1980).

■ Accordingly, the Court rejects the Secretary's contention that plaintiff was at fault for having accepted any payments after August, 1978. For the same reasons, the Court also rejects Magistrate Scoville's recommendation that plaintiff be found at fault for having accepted payments after August, 1980. His recommendation is presumably based on the fact that plaintiff then told SSA through Foster that she was not disabled. Yet, it remains undisputed that Foster did not at that time advise plaintiff that she was not or may not be entitled to benefits. If correctness of payments is a function of SSA authorization after application of objective criteria to facts, then it remains clear that plaintiff had not, as of August, 1980, been given

---

**3.** The Secretary makes much of the fact that plaintiff did not blame her relinquishment of employment on her illness. It is just as true, however, that plaintiff reported continued impairment of her ability to work. These matters are significant not for their truthfulness, but because they represent the extent of communications between plaintiff and SSA.

any reason to suspect that benefits authorized had been or would be revoked. It was the November, 1980 letter which finally removed plaintiff's suspicions from the subjective to the objective by apprising her that SSA, too, had doubts about her continuing entitlement to benefits. Then, considering her intelligence and educational background, she can be expected to have known that subsequent payments were incorrect. Thus, plaintiff was at fault for having accepted payments only after November, 1980.

Plaintiff objects. It is her position, in response to the Report and Recommendation, that the November, 1980 letter from SSA, *supra*, informed her that benefits continued to be authorized until the third month after a formal decision denying further benefits. Thus, it is argued, she was justified in accepting payments at least until April, 1981, when she voluntarily began sending them back to SSA.[4]

Plaintiff's position is not unreasonable. However, a careful reading of the November, 1980 letter, of which plaintiff was certainly capable, negates the argument. The letter indicates payments would be authorized, not until the third month after the formal decision was made, but until the third month after her disability ended. The letter also indicates plaintiff's disability appeared to have ended in September, 1978. Thus, the letter apprised plaintiff that all payments received after November, 1978 were of questionable propriety and gave her strong reason to believe that payments received after November, 1980 were incorrect.

### III

In conclusion, the Court adopts Magistrate Scoville's recommendation that plaintiff's entitlement to disability benefits be deemed to have ceased in July, 1979. The Court also finds substantial evidence supports the conclusion that plaintiff can be expected to have known that benefits received after November, 1980 were incorrect. She was not at fault for having accepted benefits through November, 1980.

All benefits paid her thereafter are subject to recovery by the SSA. Further, the Court finds that recovery of benefits received from July, 1979 through November, 1980 is dependent upon further determinations by the Secretary as to whether such recovery would defeat the purposes of disability benefits or be against equity and good conscience. 42 U.S.C. § 404(b). This matter must therefore be remanded for further administrative proceedings consistent with this Opinion.

An order to this effect shall issue forthwith.

---

**4.** Payments did not cease until September, 1981, and a formal decision denying benefits was not issued until February, 1982.