Jim **COULSTON**, Plaintiff,

v.

Kenneth **APFEL**, Commissioner of Social Security, Defendant.

No. Civ. 1–99–CV–10017.

United States District Court, S.D. Iowa, Western Division.

Oct. 13, 1999.

Joseph G. Basque, Legal Services Corp of Iowa, Council Bluffs, IA, for Jim Coulston, plaintiff.

Inga Bumbary–Langston, United States Attorney, Des Moines, IA, for Commissioner of Social Security agent Kenneth Apfel, defendant.

## ORDER

LONGSTAFF, Chief Judge.

Plaintiff seeks review of the Commissioner of Health and Human Services' decision denying his request for waiver of overpayment recovery of disability insurance ("disability insurance") benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.* Pursuant to 42 U.S.C. § 405(g), this Court may review the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for disability insurance in April 1980 due to an intellectual impairment. His claim was granted and benefits awarded effective April 1979. In a letter

dated January 22, 1997, the Social Security Administration ("the Administration") notified plaintiff that he had been overpaid in the mount of $18,249.00. Plaintiff's timely request for waiver of overpayment recovery subsequently was denied initially and upon reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). In a written order dated November 14, 1997, the ALJ found that plaintiff was not without fault regarding the overpayment and recovery, and denied plaintiff's request for a waiver. On February 26, 1999, the Appeals Council denied plaintiff's request for review. The ALJ's decision thus stands as the final decision of the Commissioner. Plaintiff filed this action for judicial review on April 2, 1999.

## II. BACKGROUND

As set forth above, plaintiff began receiving disability insurance benefits in April 1980, for a disability commencing in April 1979. Tr. 13, 32. The record reflects that approximately three years after his initial receipt of benefits, plaintiff received a $4,000 overpayment, which he paid back in $100 increments. Tr. 32–33. Otherwise, plaintiff's disability payments continued without incident for more than sixteen years.

The present action concerns a second overpayment that occurred in late 1996. Specifically, around November 25, 1996, plaintiff received a check from the Administration in the amount of $20,658.00. Tr. 42–43. Within several days thereafter, plaintiff also received a notice from the Administration explaining that plaintiff had been underpaid through October 1996, and was entitled to a additional lump sum benefit of $20,658.00. Tr. 104. The notice also stated that plaintiff would begin receiving an increased monthly benefit of $1,595.00.[1] Id.

Plaintiff testified at the hearing that because he is illiterate, his ex-wife read the check and letter to him. Tr. 34. Both plaintiff and his ex-wife believed the check was for $2,000.00, and that it was compensation to which he was entitled for discontinuing his "medical assistance,"—presumably, Medicare. Tr. 44. Plaintiff testified that he had terminated his "medical assistance" at some point before receiving the check, although he could not remember the exact date. Tr. 44.

Plaintiff testified that it was not until he and his friend Jim Ruby took the check to a bank that he learned the check was in fact for $20,000. Tr. 34–35, 44. The bank would not cash the check because plaintiff did not have an account there, so Mr. Ruby suggested plaintiff open an account at United Credit Union in Council Bluffs. Tr. 37–37, 116. Plaintiff testified this was the first and only "bank" account he had ever owned. Tr. 51. Thereafter, he made daily withdrawals of all but $5,000 of the initial $20,000, and used the money to pay bills and buy Christmas gifts. Tr. 38, 51.

Both plaintiff and his ex-wife maintain that plaintiff called the local Administration office approximately two weeks after receiving the check, and that an Administration representative confirmed that his benefits had been increased to $1,595.00. Tr. 49. It is not clear whether plaintiff asked the representative about the lump sum check. The Administration acknowledges plaintiff and his wife contacted the office several times after receiving the overpayment, but denies that an agency representative told plaintiff he could keep the check. Tr. 122. Rather, the Administration claims its representatives repeatedly told the Coulstons the check was issued in error and must be repaid. Id.

Plaintiff returned the remaining $5,000 to the Administration on or about December 11, 1996. Tr. 116. More than one month later, in a notice dated January 22,

1. Although the date of the initial notification letter is unclear, the record indicates the letter was remailed on December 15, 1996.

1997, the Social Security Administration formally notified plaintiff that he had been overpaid in the amount of $18,249.00, and informed plaintiff that if he did not repay the entire amount within 30 days, the Administration would withhold his entire benefit check each month until the overpayment was fully recovered. Tr. 106–09.

In his request for a waiver of overpayment, Mr. Coulston argues that he reasonably relied on agency representations that he was entitled to the check, and therefore, is without fault regarding the overpayment.

## III. FINDINGS OF THE COMMISSIONER

The ALJ found plaintiff was overpaid benefits in the amount of $16,608 in October, November and December 1996. Tr. 17. The ALJ determined plaintiff "could have been expected to know that the payment was incorrect," and that plaintiff was not "without fault" in accepting the overpayment. Tr. 17. Specifically, the ALJ reasoned:

> [T]he fact remains that Mr. Coulston, Ms. Coulston, and Mr. Ruby realized the significance of the check soon after it was received; Mr. Coulston has apparently managed his SSA benefits without the assistance of a representative payee; Ms. Coulston and Mr. Ruby are seemingly capable of managing their own finances and advising Mr. Coulston; and Mr. Coulston and Mr. Ruby should have questioned the check, particularly when the bank declined to negotiate it.

Tr. 17. The ALJ therefore concluded that recovery of the overpayment may not be waived, but specified that recovery "be accomplished by means that will not cause hardship to Mr. Coulston or his family." Tr. 17–18.

## IV. APPLICABLE LAW AND DISCUSSION

### A. Guiding Law

 A court must affirm the decision of the Commissioner if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g) "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Johnson v. Chater*, 108 F.3d 942, 943 (8th Cir.1997). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir.1992). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater*, 82 F.3d 259, 260 (8th Cir.1996).

### B. Whether Plaintiff is Entitled to a Waiver

The applicable regulations provide for a waiver of any overpayment of benefits where the individual was "without fault" and repayment or adjustment would either defeat the purpose of the Act or offend equity and good conscience. 42 U.S. § 404(b); 20 C.F.R. § 404.506. "Although the Administration may not have been without fault in making the overpayment, [however], that fact does not relieve the overpaid individual ... from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. An individual to whom an overpayment has been made is not "without fault" if the payment resulted from any of the following:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect, or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id.* "In determining whether an individual is at fault, the Social Security Administra-

tion will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational or linguistic limitations ... the individual has." *Id.*

In the present case, the Court finds substantial evidence supports the ALJ's conclusion that plaintiff "knew or could have been expected to know [the October 1996 lump sum payment] was incorrect." Although the Court agrees with the plaintiff that the financial prowess of either Mr. Ruby or plaintiff's ex-wife is irrelevant to the determination, the record shows plaintiff was able to manage his own finances for sixteen years without assistance from a representative payee. Plaintiff was well aware of the amount of his customary check, as well as the temporary increase given him by the Administration. Tr. 38. He further demonstrated a clear understanding of the amount of money he was able to make each month without jeopardizing his disability benefits, Tr. 45, and testified that he understands how difficult it is "to make ends meet." Tr. 47. These facts, added to the fact plaintiff had previously received an overpayment, and thus knew such an occurrence was possible, support the ALJ's conclusion plaintiff knew or should have known the check was incorrect. The Court further notes plaintiff's testimony that he "almost passed out" when he learned the check was for $20,000, "because I never did have that much in my whole life, not even working." Tr. 47. This statement detracts from plaintiff's testimony that he truly believed he was entitled to the check as reimbursement for his Medicare payments. If plaintiff's total earnings did not exceed $20,000, he could not reasonably expect to be *reimbursed* that amount for Medicare premiums.

Plaintiff contends he should nevertheless be entitled to keep the overpayment because an unidentified Administration representative told him he was entitled to the lump sum amount and monthly benefit increase. *See, e.g., Gormas v. Bowen,* 713 F.Supp. 234, 237 (W.D.Mich.1989) (ambig-

uous communication between claimant and Administration, upon which claimant reasonably relied, supported finding plaintiff was "without fault"). Other than plaintiff's assertion, there is no evidence such a conversation ever took place in the present case, however. Furthermore, unlike the plaintiff in *Gormas,* plaintiff did not rely on the Administration's alleged statement of verification. By his own account, plaintiff did not even attempt to contact the Administration until two weeks after he had received and deposited the check. Tr. 49. By this date, plaintiff had spent all but $5,000 of the overpayment. Tr. 116.

The regulations also provide for a waiver where repayment would defeat the purpose of Title II or offend equity and good conscience. 20 C.F.R. § 404.506(c). The first criterion, whether repayment would defeat the purpose of Title II, depends on whether an individual has sufficient income or financial resources to meet his daily living expenses. The record shows that plaintiff himself indicated in February 1997 that he was able to pay back $100.00 per month, Tr. 72, and that as of April 1997, his living expenses exceeded his dishwashing income by only $189.00. Tr. 95. Furthermore, exactly $189.00 of his total living expenses were attributed to a monthly car payment and gas. Tr. 95. At the time of the hearing, plaintiff testified he no longer had a car, and did not have a driver's license. Tr. 54. It is assumed, therefore, that his monthly living expenses decreased accordingly. Because plaintiff's dishwashing income is sufficient to meet his daily living expenses, the Court finds substantial evidence supports the Commissioner's decision that recovery of the overpayment does not defeat the purpose of Title II.

Recovery also may be waived if doing so would be against equity and good conscience. Such a finding depends upon whether an individual changed his position for the worse, or relinquished a valuable right in reliance on the overpayment. 20 C.F.R. § 404.509. Again, however, plaintiff spent the bulk of the overpayment

*before* contacting the Administration to determine whether the check was in error, and thus, cannot be said to have "relied" on the validity of the overpayment. Lacking other evidence plaintiff "changed his position for the worse," the Court finds substantial evidence supports the Commissioner's determination that recovery of the overpayment does not offend equity and good conscience.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence in the record as a whole and is therefore **affirmed.**

IT IS SO ORDERED.