Samuel H. PEELER, Appellant,

v.

Margaret HECKLER, Secretary, Department of Health & Human Services, Appellee.

No. 85–1054.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1985.

Decided Jan. 14, 1986.

**650**

Susan M. Simeone, Clayton, Mo., for appellant.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

Samuel Peeler brought this suit in the United States District Court for the Eastern District of Missouri challenging the defendant's suspension of his social-security disability benefits. He asserted that the statute under which the defendant acted is an unconstitutional *ex post facto* law and also resisted the defendant's efforts to force repayment of benefits which the plaintiff had already received. The District Court dismissed the complaint, from which order the plaintiff now appeals. We affirm as to the constitutionality of the statute but reverse and remand for further proceedings on the application of the statute to this individual and on the issue of repayment.

## I. BACKGROUND

Samuel H. Peeler is a 56-year-old inmate at the Missouri Eastern Correction Center in Pacific, Missouri. In 1973, before his incarceration, he began receiving social-security disability benefits on account of a substantial and permanent hearing loss. In 1978 he began serving a prison sentence for a felony. He continued receiving his disability benefits while in prison, as was allowed under the law at that time. In October 1980 Congress enacted an amendment to the Social Security Act which suspended disability benefits for incarcerated felons. Pub.L. No. 96–473, § 5(b), 94 Stat. 2263, 2265 (1980) (current version at 42 U.S.C. § 402(x) (Supp. I 1983)).[1] This provi-

1. The provision as enacted read as follows:

Notwithstanding any other provision of this title, no monthly benefits shall be paid under

sion became effective on 1 October 1980. The Social Security Administration, which was aware that Mr. Peeler was in prison, continued to pay benefits to him until June 1981, when he was informed that his benefits were being suspended. The Social Security Administration also informed him at that time that he would be required to repay all benefits received between October 1980 (the effective date of the Act) and the date of his notice. Mr. Peeler promptly appealed the suspension of his benefits and was granted an administrative hearing. On 24 October 1983 the Administrative Law Judge denied reinstatement of Mr. Peeler's benefits and ordered him to repay all amounts received after October 1980, some $4,000. Upon receiving an adverse administrative review decision from the Appeals Council on 30 March 1984, Mr. Peeler filed this action in the District Court.

The District Court on 19 October 1984 dismissed plaintiff's action for failure to state a claim. In so doing the Court relied on a magistrate's recommendation which treated Mr. Peeler's complaint as a due-process challenge to the statute. However, a fair reading of the *pro se* complaint and its supporting papers discloses three other issues which were not addressed by the District Court. Mr. Peeler's appointed counsel has been of assistance to her client and this Court in sharpening our focus on the questions which Mr. Peeler attempted to raise in the lay prose of his complaint. We restate the issues as follows:

(1) Is 42 U.S.C. § 402(x)(1) an *ex post facto* law forbidden by Article I, § 9 of the Constitution?

(2) Do the provisions of § 402(x)(1) apply to an inmate who is not given an opportunity by the state to participate in an approved rehabilitation program?

(3) Did the District Court err in upholding the repayment order of the Secretary?

## II. ANALYSIS

### A. *EX POST FACTO* LAW

■ An *ex post facto* law is one which reaches back in time to punish acts which occurred before enactment of the law. A penal statute may also be an *ex post facto* enactment if it adds a new punishment to the one that was in effect when the crime was committed. *Ex Parte Garland,* 4 Wall. 333, 377, 18 L.Ed. 366 (1866). The appellant contends that § 402(x)(1) as applied to him is such a law, since its sanctions are triggered by the past commission of a felony, and its effect is the forfeiture of a benefit formerly received. However, even if what the appellant says is a true characterization of the statute, we may not hold that it imposes *ex post facto* penalties unless the law was enacted for a punitive purpose. *Flemming v. Nestor,* 363 U.S. 603, 613–14, 80 S.Ct. 1367, 1374, 4 L.Ed.2d 1435 (1960). If the law in question is focused on the past crime, then it is likely intended as a punishment, while if the focus is upon the benefit from which the person is barred, it is not, even though the impact on the individual may be harsh. See *De Veau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 1154, 4 L.Ed.2d 1109 (1960). The mere denial of a noncontractual government benefit (such as disability payments) without a showing of penal intent, does not fall within the *ex post facto* prohibition. *Nestor,* 363 U.S. at 617, 80 S.Ct. at 1376. We are bound by the recent holding of this Court in *Jensen v. Heckler,* 766 F.2d 383 (8th Cir.), *cert. denied,* 106 S.Ct. 311, 88 L.Ed.2d 288 (1985), that, despite some indications that Congress intended § 402(x)(1) to be at least in part

this section, or under section 202(d) by reason of being under a disability, to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility, pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily partici-

pating in a rehabilitation program which has been specifically approved for such individual by a court of law and, as determined by the Secretary, is expected to result in such individual being able to engage in substantial gainful activity upon release and within a reasonable time.

punitive, it is not an *ex post facto* law, since there is a rational connection between the provision·and the nonpunitive goal of regulating the distribution of disability benefits. 766 F.2d at 386. People in prison have their subsistence needs taken care of by the imprisoning jurisdiction. For this reason, it was entirely rational for Congress to suspend federal disability payments to this group of beneficiaries.

## B. REHABILITATION

The statute provides an exception to the general suspension of benefits when the inmate is "actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual by a court of law...." The government contends that the mere fact that Mr. Peeler is not participating in such a program justifies suspending his benefits. The District Court agreed with this position. The appellant argues, however, that there has never been a court decision either way as to whether he should be in a rehabilitation program. He suggests that his benefits should never have been suspended without some determination as to whether he should be in a rehabilitation program, or, in the alternative, that there should be a determination now whether there is a program of rehabilitation appropriate to his needs. Appellant also argues that the phrase "approved for such individual by a court of law" authorizes any court, including a federal court, to order his admission to a program of rehabilitation in his facility.

We do not agree that the statute was·intended to give the federal courts the power to make decisions as to the correctional plan for individual inmates in state prisons. That is primarily a state function and should be determined under the laws and by the courts of the individual state. The phrase "a court of law" in the statute is most naturally read as referring to a court of the imprisoning jurisdiction, presumably the court that imposed the sentence. Mr. Peeler, of course, was sentenced before the 1980 amendment to the

Social Security Act, but it is possible that the sentencing court, in view of the amendment, might entertain a request from him that a rehabilitation program be approved. He should be given an opportunity to make such a request before a final determination is made that his benefits cannot be resumed because of § 402(x)(1).

We therefore direct that, on remand, this case (except with respect to the question of overpayment of benefits actually received by the plaintiff, a question addressed below) should be held on the docket of the District Court pending appropriate further proceedings. If plaintiff wishes to pursue the matter, he should, within such reasonable time as the District Court may fix, file a motion with the sentencing court and seek approval of a rehabilitation program. If the sentencing court approves such a program for him, the Secretary of Health & Human Services should then consider, as required by § 402(x)(1), whether the program so approved can be "expected to result in [Mr. Peeler's] being able to engage in substantial gainful activity upon release and within a reasonable time." If the Secretary's determination on this question is unfavorable to the plaintiff, he may then return to the District Court and seek review of this determination without having to file a new action.

If, on the other hand, the state courts decline to approve a rehabilitation program for plaintiff, certain further questions of law may arise. If the state court holds, for example, that it simply has no authority to approve a rehabilitation program, plaintiff will be free to argue that Congress, at least with respect to persons sentenced before 1980, did not intend that benefits be discontinued in states that have no procedure for the approval of a rehabilitation program. We note, in addition, that the Administrative Law Judge found that there was no rehabilitation program at plaintiff's institution for which he could qualify. Plaintiff suggests in this Court that the state may be in violation of the Rehabilitation Act, 29 U.S.C. § 794, which prohibits discrimina-

tion against the handicapped in programs receiving federal financial assistance.

None of these questions is ripe for decision at the present time. We do not know what the state courts will do when confronted with plaintiff's request. Nor do we know what rehabilitation programs exist in Missouri penal institutions, or whether these programs are receiving federal financial assistance. If plaintiff's efforts to obtain the approval of a program from the court that sentenced him prove unsuccessful, he is free to return to the District Court and make any or all of these contentions. At that time plaintiff will, of course, have to make a proper factual record against which these legal contentions can be evaluated. We leave all of these issues for another day, and intimate no view as to their merit or lack of merit. We note, in addition, that the only named defendant in this case is the Secretary of Health and Human Services. Missouri state prison officials are not named defendants, and it will therefore not be possible to order any relief against them under the Rehabilitation Act or otherwise.

## C. REPAYMENT OF BENEFITS

The Secretary is authorized under 42 U.S.C. § 404(a)(1) to recoup overpayments of benefits to individuals. But § 404(b) provides that:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

In dismissing the appellant's complaint against the Secretary, the District Court accepted the decision of the Administrative Law Judge that Mr. Peeler was "at fault" in accepting disability benefits during the period of October 1980 through June 1981. The record discloses no substantial evidence on which that decision could have been founded, at least as to the period of October through April.

Regulations applying § 404(b) provide that an individual is "at fault" in retaining an overpayment of benefits when the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The Secretary does not contend that Mr. Peeler failed to inform the Social Security Administration that he was incarcerated. (Indeed, Mr. Peeler testified without contradiction that his daughter had notified the Social Security Administration shortly after his imprisonment and had been assured at that time that he was still entitled to his benefits.) Nor is it alleged that he made a false or incorrect statement. Instead, the Secretary argues that Mr. Peeler knew or should have known that he was not entitled to receive the payments after October of 1980. The record on which the Administrative Law Judge based his finding of fact does not disclose by what means Mr. Peeler "knew or could have been expected to know" that he was no longer entitled to receive his benefits. The Social Security Administration itself apparently did not realize that Mr. Peeler was no longer eligible for benefits until April 1981 at the earliest, and did not demand repayment until June of that year. It is alleged that a form notice was sent to all affected recipients with their October 1980 benefits checks, but it was Mr. Peeler's uncontradicted testimony, not explicitly discredited by the ALJ, that his check was directly deposited with his bank; there was no evidence that he received notice in fact of the new law or its effect on him before April.

■ Beneficiaries are not presumed to know of each new arcanum of social-securi-

ty law. See *Cucuzzella v. Weinberger*, 395 F.Supp. 1288, 1295 (D.Del.1975). They are not presumed to have acted with fault when, in the absence of changed personal circumstances, they accept a benefit payment in the amount which they have been accustomed to receiving each month. The waiver-of-repayment provision in § 404(b) reflects Congressional recognition that mistakes do occur in the administration of a program as massive as Social Security and that it would be fundamentally wrong for the beneficiaries to bear the burden occasioned by the government's mistakes when they were innocent of any degree of fault themselves. Since there is no substantial evidence in the record to support the Administrative Law Judge's finding of fault, that finding must be reversed as to the alleged overpayments through the month of April 1981. As to the benefit payments which Mr. Peeler received in May and June 1981, there was some evidence that he had received some kind of notice (see Appellant's Brief Addendum at 65) in April 1981. However, the record does not disclose the content of that notice. Therefore, upon remand the District Court should remand to the Administrative Law Judge for a determination of whether, based on a consideration of all the pertinent circumstances surrounding the overpayment, Mr. Peeler was at fault in retaining his benefit checks for the months of May and June of 1981.

■ Since no fault was shown in Mr. Peeler's retention of the benefits checks for the months of October through April, there must be a further determination by the factfinder whether recovery of such overpayment would defeat the purpose of the statute or would be against equity and good conscience. 42 U.S.C. § 404(b). Since there was no finding on this question in the first instance, upon remand it must be referred to the Administrative Law Judge for further factfinding and determination in the light of all relevant circumstances.

In summary, while we affirm the District Court's decision upholding 42 U.S.C. § 402(x)(1), we conclude that the *pro se*

complaint in other respects stated a possibly meritorious claim the dismissal of which was premature. Therefore, we reverse in part and remand to the District Court for further proceedings in accordance with this opinion. The District Court will in turn remand the overpayment issues to the ALJ for further findings of fact. The remainder of the case, relating to the possible consequences of the state courts' refusal to approve a rehabilitation program for plaintiff, should be held in abeyance in the manner described in Part IIB of this opinion.

It is so ordered.