**Franklin F. GRAHAM, et al., Plaintiffs,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. H–84–3451.**

United States District Court, S.D. Texas, Houston Division.

Oct. 29, 1986.

John S. Applegate, Covington & Burling, Robert N. Sayler, William F. Greaney, Alvin J. Bronstein, Steven Ney, National Prison Project of the American Civil Liberties Union Foundation, Washington, D.C., Stefan Presser, Texas Civil Liberties Union Foundation, Houston, Tex., for plaintiffs.

Wendy Kloner, Dept. of Justice, Civil Div., Sheila Lieber, Washington, D.C., Samuel Longoria, Asst. U.S. Atty., Houston, Tex., for defendant.

## MEMORANDUM

HUGHES, District Judge.

This suit challenges the constitutionality of a section of the Social Security program that denies retirement benefits to imprisoned felons. The plaintiffs attack the section on the grounds that it denies them equal protection of the laws and that it is an *ex post facto* law. The challenge is denied.

1. *The Statute.*

[N]o monthly benefits shall be paid ... to any individual ... confined in a ... penal institution ... [for] a felony.... 42 U.S.C. § 402(x)(1). The statute was modified in 1980 to suspend disability benefits to prisoners. 42 U.S.C. § 423(f)(1) (1980) (repealed). In 1983, the termination of benefits was extended to bar payment of retirement benefits. 42 U.S.C. § 402(x)(1) (1983).

2. *Background.*

The five plaintiffs are inmates of the Texas Department of Corrections. They are there under felony convictions. Each of the five received retirement payments under the Social Security Act until May 1, 1983, when the section in question became effective. The only issue is whether the suspension of retirement benefits is constitutional. The case involves only the felons

themselves; no suspension of benefits to their dependents is involved.

### 3. *Equal Protection through Due Process of the Laws.*

■ When a governmental action affects a right through a classification in furtherance of a governmental interest, the judiciary will scrutinize the congruence of the characteristics of the means of classification with the object of the act under the facts to guarantee that individuals who are similarly situated are treated similarly.

■ Judicial review under the equal protection aspect of the due process clause is made more or less stringent depending on: (a) the significance of the component of liberty affected, (b) the magnitude of the deprivation, (c) the defensibility of the classification employed, (d) the importance of the government's interest served, and (e) the correlation between the means selected and end served.

■ In this instance, the rule is more precisely stated: When a governmental action affects an *ordinary* right through a *neutral* classification in furtherance of a *legitimate* governmental interest, the judiciary will *deferentially* scrutinize the congruence of the means of classification with the object of the act under the *actual* facts to guarantee that individuals who are similarly situated are treated similarly.

### A. *The Classification.*

■ Although inmates of correctional facilities are seriously disadvantaged when they are compared to individuals at liberty and although they are the subject of political hostility, they do not constitute a suspect class because their status is the result of precise, individualized application of otherwise neutral laws. *See Jackson v. Congress of United States*, 558 F.Supp. 1288 (S.D.N.Y.1983).

### B. *The Component of Liberty.*

■ The particular component of liberty that is being affected adversely is participation in a welfare payment scheme. This right to equal consideration for receipt of sustenance funds is important, but not fundamental. *See Lavine v. Milne*, 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 1015 n. 9, 47 L.Ed.2d 249 (1976). In this case the deprivation of the contributions only marginally reduces the individual's opportunity to exercise his other, more significant liberty interests. *Cf. Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) (prisoners but not probationers must pay for appellate transcripts); *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972) (denial of exemptions for attachment of prisoners property for certain criminal court-related debts).

### C. *The Magnitude of the Deprivation.*

■ If the component of liberty were defined as the opportunity to some means of support, the deprivation disappears because the prisoners are sustained by a government.

### D. *The Nature of the Governmental Interest.*

The state has three apparent interests: (1) conservation of resources generally, (2) allocation of welfare effort, and (3) reduction of discipline problems from prisoners' possessing excess funds.

■ The Social Security program is commonly referred to as an insurance program, similar to private retirement plans that are actually funded by employer and worker payments. The program is not contractual. The contributions are taxes; the benefits are appropriations. *Helvering v. Davis*, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937); *see* 42 U.S.C. § 1304.

That the program is not contractual does not end the inquiry; it focuses our questioning on the fit of the means to the end rather than on whether a benefit is vested or accrued, in a legal sense, to an extent sufficient to limit the legislature's authority to change the plan.

■ The transfer of wealth among sectors of a society to improve its impression of its own equity is necessarily a vague and

imprecise exercise of governmental power. The distinctions that must be made inevitably seem oppressive to the excluded, especially the newly or narrowly excluded. To find a constitutional infirmity in the vision of social justice chosen by the government for supplemental financial assistance there must be reliance on prohibited criteria, implicating more than the existence of alternative policy choices and disparate results.

The nature of the government's interest in reducing money-related discipline problems is not reached, but it appears to be considerably less substantial than the fiscal grounds, and it is completely extraneous to the context of the Social Security Act.

### E. *The Fit of the Means to the End.*

The old age portion of Social Security should not be affected by the prisoners' governmental support, the prisoners argue, because other provisions of the statute are not based on the recipient's need. The benefits that are not based on need have other sufficiently rational purposes to resist judicial invalidation.

■ There are Social Security provisions that cause benefits to end when the recipient's status changes irrespective of actual need, like marriage and divorce of children and spouses. 42 U.S.C. § 402(d)(1). Institutionalization for mental illness in a state-owned hospital (as opposed to a Medicaid-supported private hospital) has been upheld as a permissible status on which to predicate a lower level of Social Security benefits. *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). Saving money by denying old age benefits to individuals who are otherwise supported by the government cannot be characterized as irrational.

### 4. *The Ex Post Facto Clause.*

■ The Constitution prohibits congress from adopting any *ex post facto* law. Article 1, § 9, cl. 3. The *ex post facto* provision prohibits both (a) criminal punishments for completed non-criminal acts and (b) increased criminal punishments for completed criminal acts. The legislature can provide for criminality and punishment only prospectively.

### A. *Motive.*

■ The prisoners urge that congress's intention was to punish further existing criminals through adopting this section of the Social Security Act. The legislative history of § 402(x) reveals some hostility to the idea that criminals could receive these benefit payments. The comments of a few members of congress do not taint the resulting statute. "Inquiries into congressional motives or purposes are a hazardous matter." *U.S. v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968). The country is left to judge what they enacted, not what they said about it. A statute may be constitutional even though both houses of congress and the president were impermissibly motivated, if the enactment, in its actual operation, viewed candidly, does not accomplish an object or employ a means that the Constitution forbids. "[T]he consideration of motive is complicated by the fact that it is altogether possible for a law which is the expression of a bad motive to be a good law." Tussman and ten Brock, *The Equal Protection of the Laws,* 37 Calif.L.Rev. 341, 360 (1949).

It is, as the prisoners urge, *post hoc* rationalization to analyze the statute to discern other, unarticulated, and not irrational purposes; but "the ability to articulate a rational and otherwise legitimate defense of a law will in practically all cases render impossible a responsible inference that it was unconstitutionally motivated...." Ely, *Legislative and Administrative Motivation in Constitutional Law,* 79 Yale L.J. 1205, 1215 n. 31 (1970).

Parenthetically, motive has been held an equally weak guide for the application of the equal protection requirement. "[I]t is arbitrary; and none the less because ... the unequal operation ... was due to inadvertence rather than design." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 416, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920).

### B. *Punishment in Fact.*

■ The cases on which the prisoners rely generally deal with changes in the criminal justice system itself. *E.g., Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). A statute that changes the method of crediting time served or in the eligibility for parole, after an individual has presumably relied on them, are acts that increase the punishment for an act after its completion.

Similarly, a civil statute that makes a disability out of an act that is wholly unrelated to the ostensible object of the statute may compel the view that it is punitive rather than regulatory. In *Cummings v. Missouri*, the Supreme Court held that an 1862 statute barring Cummings from being a minister because of his participation in the southern rebellion was punitive. *Cummings v. Missouri*, 71 U.S. 277, 4 Wall. 277, 18 L.Ed. 356 (1867). The case was somewhat easier than it otherwise might have been because of the existence of a presidential pardon. *See U.S. v. Klein*, 80 U.S. 128, 13 Wall. 128, 20 L.Ed. 519 (1872) (an attempted legislative nullification of a pardon).

On the other hand, when the civil statute is supported by plausible (but less than compelling) purposes that are other than punitive, it will be upheld. The status of former felon has been sustained as a bar to union leadership. *De Veau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960). In fixing categories of potential bad influences to exclude from labor activities, congress must act on the basis of generalizations. *See New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

Depriving someone of Social Security benefits because of deportation is not punishment. Although congress's plenary power over immigration was exercised with doubtful humanity in deporting Nestor for his former political views, once he was deported, it was not punishment to deny him Social Security benefits; virtually all deported persons were denied benefits, whatever the reason for their deportation.

*Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). If the provision denied benefits only to felons who had committed particular types of crimes, the *ex post facto* and attainder problems might be insurmountable. *See U.S. v. Lovett*, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *Cummings*, 17 U.S. 316, 4 Wall. 277, 4 L.Ed. 579 (1867).

### 5. *The Class Action Request.*

■ No class will be certified. There are numerous similar cases progressing through the courts. A sufficient number of authoritative decisions will sooner produce a conclusive result than would the management of a nationwide class action, with less expense to the parties and to the courts.

### 6. *Conclusion.*

■ The denial of retirement benefits to felony prisoners will be sustained because it bears a "fair or substantial relation to the proper object" of the legislation, *Royster Guano*, 253 U.S. 416, 40 S.Ct. 560, 20 L.Ed.2d 672 (1920); *McCulloch v. Maryland*, 4 Wheat. 316 (1819) (appropriate, plainly adapted).

Signed on October 29, 1986, at Houston, Texas.

### FINAL JUDGMENT

It is adjudged that Franklin F. Graham, Raul Garza, Juan Cantu, Dolores Gonzales, Jr., and Frank Sellers take nothing by their suit against the Secretary of Health and Human Services.

Signed on October 29th, 1986, at Houston, Texas.