Jason B. NICHOLAS, Plaintiff,

v.

Richard RILEY, Secretary, U.S.
Department of Education,
et al., Defendants.

Civ. A. No. 94–2178 (CRR).

United States District Court,
District of Columbia.

Jan. 17, 1995.

Jason B. Nicholas, pro se.

Anjali A. Ashley, with whom Sheila M. Lieber, U.S. Dept. of Justice, Civ. Div., Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, U.S. Atty. for the District of Columbia, and James O'Neill, Counsel, U.S. Dept. of Educ., Washington, DC, were on brief, for defendants.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the Defendants' Motion to Dismiss, the Plaintiff's Opposition thereto, and the Defendant's Reply Memorandum in Support of its Motion to Dismiss and Opposition to Plaintiff's Motion for a Preliminary Injunction. Because the Plaintiff has failed to state a claim upon which relief can be granted, the Court will GRANT the Defendant' Motion.

## I. BACKGROUND

Plaintiff, a New York state prisoner proceeding *pro se* and *in forma pauperis*, seeks to have the Court declare a section of the Violent Crime Control and Law Enforcement Act of 1994, amending § 401(b)(8) of the Higher Education Act to prohibit the award of Pell Grant funds to federal or state prisoners, violative of the Equal Protection Clause, the Due Process Clause, and the Administrative Procedures Act. Complaint, ¶ 2. As a remedy, Plaintiff asks the Court to issue both a preliminary and permanent injunction pro-

hibiting the Defendants from enforcing the provision, and a writ of mandamus directing the Defendants to grant the aforementioned funds to otherwise eligible federal and state prisoners. *Id.* Plaintiff also requests the award of costs. *Id.*

Currently incarcerated at the Collins Correctional Facility in Collins, New York, Plaintiff has been enrolled in and attending college programs offered inside the prison by private colleges since 1992. Complaint, ¶ 14. During that time, Plaintiff has been a Pell Grant recipient. *Id.*[1] Prior to the enactment of the Violent Crime Control and Law Enforcement Act of 1994, HEA § 401(b)(8) barred the award of Pell Grants to death row prisoners and prisoners serving life sentences without possibility of parole or release; no such restriction was placed on the award of Pell Grants to other prisoners. *See* 20 U.S.C. § 1070a(b)(8)(A), as added by the Higher Education Act Amendments of 1992, Public Law 102–325. However, as part of the Violent Crime Control and Law Enforcement Act of 1994,[2] Congress amended HEA § 401(b)(8) to prohibit the award of Pell grant funds to all prisoners.[3] Accordingly, Plaintiff will no longer be eligible to receive Pell Grant funds to offset the costs of his college education. Complaint, ¶ 14.

## II. *DISCUSSION*

A. *The Denial of Pell Grant Monies to Prisoners Solely on Account of their Status Qua Prisoners Does Not Violate Equal Protection.*

Because governmental distinctions between prisoners and nonprisoners need only satisfy rational basis scrutiny in order to comport with the Equal Protection Clause,

and because the denial of Pell Grant monies to prisoners is rationally related to legitimate governmental interests, Plaintiff fails to state an equal protection claim upon which relief can be granted.

1. *Governmental distinctions between prisoners and nonprisoners merit rational basis scrutiny.*

■ So far as treating prisoners differently than nonprisoners is concerned, the Equal Protection Clause requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose. *See Moran v. United States,* 18 F.3d 412, 413 (1994). Notwithstanding Plaintiff's attempt to invoke strict scrutiny, Plaintiff's Opposition, 6–11, discrimination on account of Plaintiff's status *qua* prisoner merits rational basis review.

■ Strict scrutiny is generally limited to suspect classifications based on immutable characteristics, such as race or national origin, *see Loving v. Virginia,* 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967), or classifications affecting fundamental rights. *See Harper v. Virginia Board of Elections,* 383 U.S. 663, 672, 86 S.Ct. 1079, 1084–85, 16 L.Ed.2d 169 (1966). Prisoners do not constitute a suspect class. *See, e.g., Scher v. Chief Postal Inspector,* 973 F.2d 682, 683–84 (8th Cir.1992) (prisoners not similarly situated to nonprisoners, thus postal employees need not handle their complaints like nonprisoner complaints); *United States v. Woods,* 888 F.2d 653, 656 (10th Cir.1989) (pre-sentence residents of halfway houses are not a suspect class); *Jones v. Grunewarld,* 644 F.Supp. 256, 259 (S.D.N.Y.1986) (prisoner not member of a suspect class either by virtue of his

---

1. Designed to help low- and middle-income families obtain needed education and training, the Federal Pell Grant Program, administered by the Department of Education through its Student Financial Assistance Program, allocates federal student financial assistance under Title IV of the Higher Education Act ("HEA"), as amended, 20 U.S.C. § 1070a *et seq.*

2. Public Law No. 103–322, 108 Stat. 1796.

3. Sec. 20411. AWARDS OF PELL GRANTS TO PRISONERS PROHIBITED

(a) IN GENERAL—Section 410(b)(8) of the Higher Education Act of 1965 (20 U.S.C. § 1070(a)(8)) is amended to read as follows: "(8) No basic grant shall be awarded under this subpart to any individual who is incarcerated in any Federal or State penal institution."

(b) APPLICATION OF AMENDMENT—The amendment made by this section shall apply with respect to periods of enrollment beginning on or after the date of enactment of this Act.

H.R. 3355, § 20411, 140 Cong.Rec. 8772, 8782 (Aug. 21, 1994).

status *qua* prisoner or his poverty); *Hicks v. Commonwealth of Virginia*, 397 F.Supp. 401, 402 (W.D.Va.1975) (same). Because the classification between prisoners and nonprisoners is not a suspect one, nor is it one meriting intermediate scrutiny, which is generally limited to gender- and illegitimacy-based classifications, *see, e.g., Mississippi University for Women v. Hogan*, 458 U.S. 718, 723–24 & n. 9, 102 S.Ct. 3331, 3335–36 & n. 9, 73 L.Ed.2d 1090 (1982); *Mills v. Habluetzel*, 456 U.S. 91, 99, 102 S.Ct. 1549, 1554–55, 71 L.Ed.2d 770 (1982), the classification need only be rationally related to a legitimate state purpose to satisfy the Equal Protection Clause.

2. *The classification between prisoners and nonprisoners is rationally related to legitimate governmental purposes.*

■ In determining whether a challenged statute has a rational basis, courts look to whether there are plausible reasons for congressional action; if so, judicial inquiry is at an end. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461–62, 66 L.Ed.2d 368 (1980). "It is of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision,' because th[e Supreme] Court has never insisted that a legislative body articulate its reasons for enacting a statute." *Id.* Hence, a statutory distinction does not violate equal protection "if any state of facts reasonably may be conceived to justify it." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). *See also Burns v. United States Railroad Retirement Board*, 701 F.2d 193 (D.C.Cir.1983).

■ Amended § 401(b)(8) satisfies the rationality requirement. Whether because of budgetary constraints, *see Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 859 n. 17, 104 S.Ct. 3348, 3358 n. 17, 82 L.Ed.2d 632 (1984) (denial of federal educational assistance to male students failing to register for the draft "is rationally related to the legitimate governmental objectives of encouraging registration and fairly allocating scarce federal resources"), the desire to increase the funding available to law-abiding students, *see Bowen*

*v. Gilliard*, 483 U.S. 587, 596–97, 107 S.Ct. 3008, 3015, 97 L.Ed.2d 485 (1987) (noting that "[t]he Fifth Amendment 'gives the federal courts no power to impose upon [Congress] their views of what constitutes wise economic or social policy,' by telling it how 'to reconcile the demands . . . of needy citizens with the finite resources available to meet those demands'") (*quoting Dandridge v. Williams*, 397 U.S. 471, 486, 472, 90 S.Ct. 1153, 1162, 1155, 25 L.Ed.2d 491 (1970)), the conclusion that other sources of educational funding available exclusively to prisoners are sufficient, *see* Congr.Rec., S 15746 (daily ed. Nov. 16, 1993) (statement of Senator Hutchison noting that "the Federal Government spends $100 million or so each year on prisoner education and training programs [available exclusively to prisoners]"), the desire to eliminate fraud in the administration of Pell Grant monies to prisoners, *see* Congr. Rec., S 15586 (daily ed. Nov. 10, 1993) (statement of Senator Hutchison noting Pell Grant fraud in the prison context), the notion that prisoners and nonprisoners are not similarly situated with regard to the contemporaneous need for higher education, *cf. Moran*, 18 F.3d at 413 ("[i] is hardly irrational to deny fees and allowances to prisoner witnesses"); *Davis v. Bowen*, 825 F.2d 799, 800–01 (4th Cir.1987) (suspension of Social Security benefits during incarceration upheld); *Andujar v. Bowen*, 802 F.2d 404, 405 (11th Cir.1986) (suspension of disability benefits during incarceration upheld); *Zipkin v. Heckler*, 790 F.2d 16, 19–20 (2d Cir.1986) (suspension of retirement benefits upheld), or a desire to shift such costs to the states, the decision to distinguish between prisoners and nonprisoners in awarding Pell Grants is rationally related to legitimate governmental purposes. Accordingly, Plaintiff fails to state an equal protection claim upon which relief can be granted.

B. *Amended § 401(b)(8) Does Not Violate Due Process.*

1. *Plaintiff does not have any constitutional entitlement to continued receipt of Pell Grant funds triggering procedural due process protections prior to revocation.*

■ In order to state a due process claim, Plaintiff is required to demonstrate

that governmental action deprived him of a constitutionally protected property interest. *Board of Regents v. Roth,* 408 U.S. 564, 576–79, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). Because Plaintiff does not have a legitimate claim of entitlement to the continued receipt of Pell Grant funds, he fails to state a due process claim upon which relief can be granted.

The linchpin of a property interest in benefits under a statutory entitlement scheme is the claimant's qualification for receipt of the benefits. *See Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). Accordingly, when the statute authorizing the benefits is amended or repealed, any constitutionally protected property right disappears. *Id.* at 129, 105 S.Ct. at 2528–29 (rejecting due process challenge to congressional amendment of the Food Stamp Act reducing the benefit levels for some recipients and altogether extinguishing the entitlement of others). Because the HEA, as amended, terminates Plaintiff's eligibility for Pell Grant awards, Plaintiff has no legitimate claim of entitlement, and hence no constitutional interest, in the continued receipt of such under the new statutory scheme. Any property interest Plaintiff might have had in the continued receipt of Pell Grant funds was extinguished by the amendment. Plaintiff therefore fails to state a Procedural Due Process claim upon which relief can be granted.

2. *Amended § 401(b)(8) does not violate substantive due process.*

██ Because no fundamental interest is implicated by the denial of Pell Grant monies, substantive due process merely requires a reasonable fit between governmental purpose and the means chosen to advance that purpose. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 19, 96 S.Ct. 2882, 2894, 49 L.Ed.2d 752 (1976) ("[u]nder the deferential standard of review applied in substantive due process challenges to economic legislation there is no need for mathematical precision in the fit between justification and means"). Section 401(b)(8) easily satisfies this reasonableness inquiry. The means chosen—the denial of Pell Grant monies to prisoners—clearly and reasonably effectuates any of the aforementioned governmental purposes. Plaintiff's arguments regarding potential correlations between the provision of educational resources and reduced recidivism, while not without arguable merit, are beyond the ken of the Court's inquiry. As noted, the Court may not substitute its policy judgments for that of the Legislature. *See Bowen v. Gilliard,* 483 U.S. at 597, 107 S.Ct. at 3015.

C. *The Department of Education's Implementation of the Statutory Ban on Pell Grants to Prisoners Does Not Violate the Administrative Procedure Act.*

The basis of any cause of action under the Administrative Procedure Act is not apparent. However, consistent with the liberal treatment afforded *pro se* petitioners, *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), the Court will construe Plaintiff's Complaint and its invocation of the Administrative Procedure Act as a grounds for the exercise of the Court's jurisdiction as a challenge to the Department of Education's implementation of the statutory proscription of the award of Pell Grants to prisoners.

██ The interpretation of a statute by an agency charged with its administration is entitled to great deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In assessing an agency's interpretation of a statute, a court must determine whether Congress has directly spoken to the precise question at issue. *Id.* at 843, 104 S.Ct. at 2781–82. If there is some ambiguity regarding Congressional intent, a court must then determine whether the "agency's answer is based on a permissible construction of the statute." *Id.* The court must give the agency's interpretation controlling weight unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44, 104 S.Ct. at 2782.

██ The precision with which Congress addressed the question of Pell Grant awards to prisoners forecloses any confusion as to Congressional intent. The text of the amendment is unequivocal in its charge that "[n]o basic grant shall be awarded under this

subpart to any individual who is incarcerated in a Federal or State penal institution." Public Law no. 103–322, 108 Stat. 1796. The legislative history to the amendment is likewise unequivocal. It is just as clear that Plaintiff falls squarely within the amendment.

Because any action by the Secretary of Education to prohibit the award of Pell Grant funds to Plaintiff fully comports with the clear language and legislative history of the amendment, such action complies with the Administrative Procedures Act. Accordingly, Plaintiff fails to state a claim thereunder upon which relief can be granted.

### III. *CONCLUSION*

Because the Plaintiff fails to state a claim upon which relief can be granted, the Court will enter an Order of even date herewith GRANTING the Defendants' Motion to Dismiss.

### *ORDER*

In accordance with the Court's Memorandum Opinion filed on this date, and for the reasons stated therein, it is, by the Court, this 17th day of January, 1995,

ORDERED that the Defendants' Motion to Dismiss shall be, and hereby is GRANTED.