Stephen TREMBLAY, Plaintiff,

v.

Richard RILEY, Secretary of
Education, Defendant.

No. 95–CV–6316L.

United States District Court,
W.D. New York.

March 6, 1996.

Stephen Tremblay, Collins, NY, pro se.

Anne VanGraafeiland, Asst. U.S. Atty.,
United States Attorney, Rochester, NY, for
defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Stephen Tremblay, is an inmate
at Collins Correctional Facility in Collins,

New York. He has filed a class-action complaint challenging Section 401(b)(8) of the Higher Education Act ("HEA"), 20 U.S.C. § 1070a(b)(8), which was amended by Congress as part of the Violent Crime Control and Law Enforcement Act of 1994 ("the Violent Crime Control Act"), Pub.L. No. 103–322, 108 Stat. 1796, to prohibit the award of Pell Grant funds to any incarcerated individual in a federal or state penal institution.

Defendant Richard Riley, the Secretary of Education ("the Secretary") has moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, plaintiff has filed motions for a preliminary injunction and for class certification.

## BACKGROUND

The complaint alleges that plaintiff has been incarcerated within New York State penal institutions since April 3, 1990. He has been taking college courses since the Spring 1991 semester. Among other financial aid, he had been receiving federal Pell Grants.[1] Prior to the enactment of the Violent Crime Control Act, Pell Grants were available to prisoners other than those on death row or serving life sentences without the possibility of parole. In 1994, however, the Violent Crime Control Act amended the HEA to prohibit the award of Pell Grant funds to all prisoners in state or federal penal institutions.

Plaintiff alleges that as a result of this amendment, he will no longer be able to take college courses and he will not be able to accumulate the 120 credit hours that he needs to receive a Bachelor's degree.

Based on these allegations, plaintiff contends that the Violent Crime Control Act violates the Constitution's prohibition of ex post facto laws, Art. I, § 9, cl. 3; that it violates the Equal Protection and Due Process Clauses of the Fifth Amendment; and that the Act constitutes cruel and unusual punishment in violation of the Eighth Amendment.

1. The Federal Pell Grant Program is designed to help low- and middle-income families obtain needed education and training. Under the program, the Department of Education provides funds to eligible educational institutions for qual-

Defendant's motion to dismiss is granted and the complaint is dismissed.

## DISCUSSION

### I. Ex Post Facto

"An *ex post facto* law is one which reaches back in time to punish acts which occurred before enactment of the law." *Peeler v. Heckler*, 781 F.2d 649, 651 (8th Cir.1986). Plaintiff alleges that the Violent Crime Control Act is an ex post facto law because it imposes a punishment—the denial of Pell Grants—for criminal conduct that occurred prior to passage of the Act.

■ The ex post facto clause applies only to punitive measures. "Essential to the success" of this claim, therefore, "is the validity of characterizing as 'punishment' in the constitutional sense the termination of [plaintiff's] benefits ..." *Flemming v. Nestor*, 363 U.S. 603, 613, 80 S.Ct. 1367, 1374, 4 L.Ed.2d 1435 (1960).

■ I find that plaintiff's claim fails on this ground. The denial of Pell Grant funds to state and federal inmates is not "punitive" as that term has been construed by the courts.

Although there do not appear to be any reported cases addressing the ex post facto implications of the Violent Crime Control Act, several cases involving the denial of various types of benefits to different classes of persons are instructive.

The first of these cases is *Flemming*, in which the Supreme Court held that an amendment to the Social Security Act providing for the termination of benefits to deported aliens was not an ex post facto law. In analyzing this issue, the Court stated that "[t]he question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a rele-

ifying students attending the institutions. The institutions then disburse those funds to the students to help defray the students' cost of attending the institutions. *See* 20 U.S.C. § 1070a *et seq.*

vant incident to a regulation of a present situation ..." *Id.* at 614, 80 S.Ct. at 1374–75 (quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866) (plurality opinion)). The Court stated that the sanction in *Flemming* was not a punishment, but "the mere denial of a noncontractual governmental benefit. No affirmative disability or restraint is imposed ..." *Id.* at 617, 80 S.Ct. at 1376.

The standard that the Court set forth for the assessment of ex post facto challenges to federal statutes was not a light one. The Court stated that "the presumption of constitutionality with which this enactment, like any other, comes to us forbids us lightly to choose that reading of the statute's setting which will invalidate it over that which will save it." *Id.* The Court further added that "unmistakable evidence of punitive intent ... is required before a Congressional enactment of this kind may be struck down." *Id.* at 619, 80 S.Ct. at 1377.

The Court also made clear that even if there is *some* punitive intent behind a statute, that alone is an insufficient basis to strike it down as an ex post facto law. The Court stated that a court reviewing a statute "cannot with confidence reject all those alternatives which imaginativeness can bring to mind, save that one which might require the invalidation of the statute." *Id.* at 621, 80 S.Ct. at 1378.

Applying the holding of *Flemming,* a number of reported cases in the 1980s uniformly rejected ex post facto challenges to an amendment to the Social Security Act ("the SSA amendment") that suspended disability and other benefits for incarcerated felons. In *Jensen v. Heckler,* 766 F.2d 383, 386 (8th Cir.) (per curiam), *cert. denied,* 474 U.S. 945, 106 S.Ct. 311, 88 L.Ed.2d 288 (1985), for example, the Eighth Circuit held that the SSA amendment was not an ex post facto law, "because the suspension of a noncontractual benefit cannot be considered a punishment." Adhering to that holding one year later in *Peeler,* the court stated that "[i]f the law in question is focused on the past crime, then it is likely intended as a punishment, while if the focus is upon the benefit from which the person is barred, it is not, even

thought the impact on the individual may be harsh. The mere denial of a noncontractual government benefit ... without a showing of penal intent, does not fall within the *ex post facto* prohibition." 781 F.2d at 651. *Accord Jones v. Heckler,* 774 F.2d 997, 999 (10th Cir.1985) (per curiam) ("suspension of the plaintiff's benefits does not constitute punishment"); *Sulie v. Bowen,* 653 F.Supp. 849, 852 (N.D.Ind.) (following *Peeler* ), *aff'd,* 836 F.2d 552 (7th Cir.1987).

It is also noteworthy that the SSA amendment withstood these challenges notwithstanding some evidence that Congress passed it with at least some punitive motives. The District of Columbia Circuit, for example, upheld the amendment even though it opined that "Congress ha[d] come about as close as possible to the line of unconstitutionality without actually crossing it." *Wiley v. Bowen,* 824 F.2d 1120, 1122 (D.C.Cir.1987). Despite the fact that "the statute single[d] out incarcerated felons as the class of persons disqualified under the law," which the court said "ma[de] one quite suspicious that its intent was punitive," and although "the legislative history include[d] statements by the sponsor and other key legislators that reflect[ed] a punitive motivation," the court nevertheless held that the statute was not an ex post facto law. *Id.* In reaching that conclusion, the court noted the Supreme Court's admonition in *Flemming* that " 'only the clearest proof could suffice to establish the unconstitutionality of a statute' on the ground 'that a punitive purpose in fact lay behind the statute.' " *Id.* (quoting *Flemming,* 363 U.S. at 617, 80 S.Ct. at 1376). The court concluded that "[d]espite [the plaintiff's] strong showing, enough doubt remain[ed] about the purpose of the statute" to persuade the court that the plaintiff had not met "the extremely difficult standard articulated in *Flemming.* " *Id.*

The Eighth Circuit in *Jensen* also recognized that "there [wa]s some indication that Congress intended the SSA amendment in part to be punitive," but held that that did not necessitate a finding of unconstitutionality. The court said that even where there is some evidence of punitive intent, the court need not invalidate a statute where " 'the

rational connection' to nonpunitive ends remains as a rationale for enacting th[e] provision," for "a court should not 'reject all those alternatives . . . save that one which might require invalidation of the statute.'" *Jensen*, 766 F.2d at 386 (quoting *Pace v. United States*, 585 F.Supp. 399, 401 (S.D.Tex.1984)). *See also Peeler*, 781 F.2d at 652 (statute may not be struck down as an ex post facto law as long as "there is a rational connection between the provision and [a] nonpunitive goal").

District courts from several circuits also rejected challenges to the SSA amendment on ex post facto grounds, again despite the courts' recognition that the amendment had punitive aspects. In *Graham v. Bowen*, 648 F.Supp. 298 (S.D.Tex.1986), for instance, the court stated that the amendment's denial of retirement benefits to incarcerated felons was constitutionally sound because it was rationally related to the government's interests in conserving resources, allocating the welfare effort, and reducing discipline problems from prisoners' possession of excess funds. *Id.* at 301. Rejecting the plaintiff's argument that the amendment was punitive, the court stated that the statute was constitutional so long as it was also "supported by plausible . . . purposes that are other than punitive . . ." *Id.* at 303. *See also Gross v. Bowen*, no. H–82–3683, 1988 WL 252067 *1 (S.D.Tex. Feb. 22, 1988) (SSA amendment denying disability benefits to incarcerated felons served remedial, rather than punitive, purpose and therefore was not ex post facto law); *Pace*, 585 F.Supp. at 401 (SSA amendment "cannot be considered punishment under current law"); *Palacio v. Secretary of HHS*, No. CV 85–6536, 1987 WL 123923 *1 (C.D.Cal. Mar. 5, 1987) (denial of social security benefits was denial of mere non-contractual benefit); *Anderson v. Social Security Admin.*, 567 F.Supp. 410, 413 (D.Colo.1983) (SSA amendment was not ex post facto law; noting that benefits had only been suspended and would become available again after plaintiff's release from prison); *Cobb v. Secretary of HHS*, Civ. No. 81–60224, 1982 WL 21042 *2 (E.D.Mich. July 21, 1982) (SSA amendment was not punitive; noting that suspension of benefits was not conditioned upon any particular form of conduct but applied to all felons, and that suspension only lasted during period of incarceration).

The Supreme Court's decision in *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) ("*Minnesota PIRG*"), provides a strong indication that the reasoning of *Flemming* and the cases upholding the SSA amendment should also apply to the Violent Crime Control Act's denial of Pell Grants to prisoners. In *Minnesota PIRG*, the Court held that a statute denying federal financial educational assistance to male students who failed to register for the draft was not an unconstitutional bill of attainder. Although no ex post facto argument was raised in that case, the Court did comment upon the nonpunitive nature of the sanction imposed. Though observing that "the severity of a sanction is not determinative of its character as punishment," *id.* at 851, 104 S.Ct. at 3354, the Court said that the statute at issue was in fact not severe, and that it "impose[d] none of the burdens historically associated with punishment." *Id.* at 853, 104 S.Ct. at 3355. As in *Flemming*, the Court said, "the sanction is the mere denial of a noncontractual governmental benefit. No affirmative disability or restraint is imposed,' and Congress has inflicted 'nothing approaching the "infamous punishment" of imprisonment' or other disabilities historically associated with punishment." *Id.* (quoting *Flemming*, 363 U.S. at 617, 80 S.Ct. at 1376). The Court also held that the statute could "be reasonably said to further nonpunitive goals" because, *inter alia*, it "further[ed] a fair allocation of scarce federal resources . . ." *Id.* at 854, 104 S.Ct. at 3356.

I believe that these cases, taken together, compel the conclusion that the Violent Crime Control Act is not an ex post facto law. There are several factors supporting this conclusion. First, the denial of Pell Grant funds, like the denial of Social Security benefits, is "the mere denial of a noncontractual governmental benefit." *Id.* at 853, 104 S.Ct. at 3355. Second, the denial is temporary; funds are unavailable only during the person's period of incarceration. Third, the statute does not apply only to persons guilty of certain specified offenses, but to all state

and federal inmates, regardless of the reason for their incarceration. Thus, it does not seek to punish persons for any particular types of conduct committed prior to the Violent Crime Control Act's passage. *Cf. Cobb,* 1982 WL 21042 *2 (holding that SSA amendment was not punitive, in part because suspension of benefits was not conditioned upon any particular form of conduct, but applied to all felons).

Although the legislative history of this particular part of the Violent Crime Control Act is sparse, there is some indication that it was motivated in part by concerns about the allocation of limited resources for higher education.[2] Senator Hutchison, the sponsor of the Pell Grant amendment to the Violent Crime Control Act, stated that while she supported the Federal Government's spending of nearly $100 million exclusively on inmate educational programs, the purpose of this amendment was to "free up the $200 million [in Pell Grants] that was going to prisoners to have their educations funded, and it will now go to the children of these low-income families for whom the Pell grants were originally intended." 139 Cong.Rec. S15746 (1993).

I am not oblivious to the fact that this amendment was enacted as part of a crime bill, not an education bill. It may be that some members of Congress did see it as a punitive, "tough on crime" measure. *See* Statement of Rep. Fazio, 140 Cong.Rec. H8989 (opining that denying Pell Grants to prisoners "may satisfy the public's demand to be tough on criminals, but is shortsighted and misguided"). As the Supreme Court noted in *Flemming,* however, "[j]udicial inquiries into Congressional motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." 363 U.S. at 617, 80 S.Ct. at 1376.

At any rate, the motives of the members of Congress who voted for the bill are not dispositive on the issue of whether the Act is an ex post facto law. "A statute may be constitutional even though both houses of congress and the president were impermissibly motivated, if the enactment, in its actual operation, viewed candidly, does not accomplish an object or employ a means that the Constitution forbids." *Graham,* 648 F.Supp. at 302.

In addition, the proper inquiry is not whether the act has any punitive aspects, but whether it has any *non* punitive aspects and whether it is rationally related to those ends. The Supreme Court in *Flemming* admonished courts not "to choose that reading of the statute's setting which will invalidate it over that which will save it." 363 U.S. at 617, 80 S.Ct. at 1376.

In *Nicholas v. Riley,* 874 F.Supp. 10 (D.D.C.), *aff'd,* No. 95–5047, 1995 WL 686227 (D.C.Cir. Oct. 10, 1995), *petition for cert. filed,* (U.S. Jan. 22, 1996) (No. 95–7598), the court rejected a constitutional challenge to the same statute at issue in the case at bar. Although the plaintiff in *Nicholas* did not raise an ex post facto argument, the court, in addressing his equal protection claim, found that the statute was rationally related to legitimate governmental purposes. The court found that the distinction between prisoners and nonprisoners in awarding Pell Grants could be justified whether it was motivated by "budget constraints, ... the desire to increase the funding available to law-abiding students, ... the conclusion that other sources of educational funding available exclusively to prisoners are sufficient, ... the desire to eliminate fraud in the administration of Pell Grant monies to prisoners, ... the notion that prisoners and nonprisoners are not similarly situated with regard to the contemporaneous need for higher education, ... or a desire to shift such costs to the states ..." *Id.* at 13.

These various rational bases for the statute recited by the court in *Nicholas* also dispose of plaintiff's ex post facto claim in the case at bar. Even if the denial of Pell

---

**2.** Legislative history is not considered to be a matter "outside the pleadings" for purposes of Rule 12(b)(6) and therefore may properly be considered on a motion to dismiss for failure to state a claim. *Anheuser–Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir.1995), *petition for cert.*

*filed,* 64 U.S.L.W. 3333 (U.S. Oct. 27, 1995) (No. 95–685); *United States v. Tuente Livestock,* 888 F.Supp. 1416, 1418 (S.D.Ohio 1995) (citing *National Ass'n of Pharmaceutical Mfrs. v. FDA,* 637 F.2d 877, 882–88 (2d Cir.1981)).

Grants to prisoners is partly punitive, it is nevertheless constitutional because a " 'rational connection' to nonpunitive ends remains as a rationale for enacting th[e] provision ..." *Jensen,* 766 F.2d at 386. (quoting *Pace,* 585 F.Supp. at 401). Plaintiff therefore cannot show the "unmistakable evidence of punitive intent which ... is required before a Congressional enactment of this kind may be struck down." 363 U.S. at 619, 80 S.Ct. at 1377.

## II.  Equal Protection

■ In his second cause of action, plaintiff alleges that the Violent Crime Control Act violates his right to equal protection under the Fifth Amendment because it creates two impermissible distinctions: that between prisoners and nonprisoners, and that between inmates of state and federal prisons and inmates of local penal institutions.

The first of these claims is identical to the equal-protection claim that was raised, and rejected, in *Nicholas.* The court there found that the classification of prisoners and non-prisoners was not a suspect one, and that it was therefore subject only to "rational basis" scrutiny. 874 F.Supp. at 12–13. For the reasons previously quoted with respect to plaintiff's ex post facto claim, the court also found that the Act satisfied the rationality requirement because there were several rational bases for the Act. *Id.* at 13. I agree with the court's reasoning in *Nicholas* and find that plaintiff has not stated an equal-protection claim based upon the distinction between prisoners and nonprisoners.

I reach the same conclusion concerning plaintiff's contention that the Act unconstitutionally distinguishes between inmates of state and federal penal institutions and inmates of local penal institutions. For one thing, it is not clear that the Act was even intended to make such a distinction. It makes no mention of local penal institutions, but simply makes Pell Grants unavailable "to any individual who is incarcerated in any Federal or State penal institution." 20 U.S.C. § 1070a(b)(8). This inclusive language does not suggest that Congress meant to carve out an exception for local institutions.

Even if that was Congress's intent, however, I find that the Act survives scrutiny under the rational-basis test. Inmates of local penal institutions, such as county or city jails, are generally not incarcerated in those institutions for extended periods of time; they are either serving relatively short sentences or awaiting transfer to a state or federal facility. As to inmates in the former category, who will be released into society before long, Congress may justifiably have decided that it is in society's best interests to provide them the same opportunities for educational assistance as those provided to the public at large. Those inmates awaiting transfer to serve federal or state sentences would be unlikely to seek Pell Grants in the first place, since they would become ineligible to receive them as soon as they entered a state or federal penal institution.

I conclude, then, that the Act's distinction between state and federal inmates and other categories of persons bears a rational relationship to legitimate governmental purposes. Plaintiff's equal-protection claim must therefore be dismissed.

## III.  Due Process

■ The third cause of action alleges that the denial of Pell Grant funds violates plaintiff's rights under the Fifth Amendment to substantive and procedural due process. Again, these same arguments were rejected in *Nicholas.* The court there held that plaintiff could not state a procedural due process claim because he had no legitimate claim of entitlement to the continued receipt of Pell Grant funds because the HEA, as amended, terminated his eligibility for the funds. Since any property interest that plaintiff may have had in the funds was extinguished by the amendment, no procedural due process rights were triggered. 874 F.Supp. at 14.

I agree with this analysis, and I also note that plaintiff has not articulated the process which he believes is due here. He does not dispute that he is in fact ineligible to receive funds under the current statute. Thus, this is not a case involving the correctness of an administrative determination of ineligibility. *Cf. Goldberg v. Kelly,* 397 U.S. 254, 264, 90

S.Ct. 1011, 1018–19, 25 L.Ed.2d 287 (1970) (hearing required before termination of welfare benefits, since termination pending resolution of controversy over eligibility could deprive eligible recipient of means to live while awaiting decision). Rather, plaintiff is simply challenging Congress's decision to make him ineligible for funds. That decision does not trigger any procedural due process rights. From a procedural standpoint, then, plaintiff has no more rights than he would if Congress eliminated the Pell Grant program altogether, which it could if it chose to do so.

Nor has plaintiff stated a substantive due process claim. The standard for analyzing this cause of action is the same as that applied to the equal-protection claim. *Pace*, 585 F.Supp. at 402. Accordingly, it fails for the same reasons.

In *Flemming*, the Supreme Court stated that "[p]articularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." 363 U.S. at 611, 80 S.Ct. at 1373. *See also Weinberger v. Salfi*, 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975). If the statute's goals are legitimate and the classification adopted is rationally related to achieving those goals, the classification is not arbitrary. *Salfi*, 422 U.S. at 769, 95 S.Ct. at 2468–69.

As explained in connection with plaintiff's equal-protection claim, the statute here meets that test. The Act is related to achieving a number of valid goals, and therefore it does not violate plaintiff's right to substantive due process. *Nicholas*, 874 F.Supp. at 14.

### IV. Cruel and Unusual Punishment

■ In his fourth cause of action, plaintiff asserts that the Violent Crime Control Act's denial of Pell Grants constitutes cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff contends that he has a particularly great need for education because he is socially and economically disadvantaged, and because the Parole Board will take his educational accomplishments into account in deciding whether he should be granted parole.

This claim fails for a simple reason: as already explained in the discussion of plaintiff's ex post facto argument, the denial of Pell Grant funds is not punishment at all, much less cruel and unusual punishment. *See Pace*, 585 F.Supp. at 402 (having determined that denial of Social Security benefits was not punishment for ex post facto purposes, court could not say that denial violated Eighth Amendment). In short, the denial of funds for education falls far short of the egregious type of conduct needed to establish an Eighth Amendment claim. *See Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400–01, 69 L.Ed.2d 59 (1981) (delayed access to educational programs is "simply not punishment[ ]"); *Termunde v. Cook*, 684 F.Supp. 255, 259 (D.Utah 1988) ("Courts have not accepted the claim that an inmate has a constitutional right to any educational ... programs ...").

### V. Plaintiff's Motions

Plaintiff has filed several motions, all of which are denied. His motion for oral argument of both sides' motions is denied because based on the record before me, I see no need to hear oral argument.

In light of my conclusion that plaintiff has not stated a claim in any of his causes of action, it is obvious that he is not entitled to a preliminary injunction. His motion for an injunction is therefore denied.

Plaintiff also moves to amend the complaint. Plaintiff states that he "only wishes to correct technical errors" in the complaint, however, *see* Plaintiff's Memorandum in Support of His Motions at 6, and the proposed changes would not affect the outcome of this case. This motion is also denied.

Plaintiff requests the court to order the United States Government to release all "congressional records, in the form of minutes," pertaining to the Violent Crime Control Act's denial of Pell Grants to prisoners. Assuming that plaintiff is referring to the Congressional Record, that is a public document, and plaintiff has not shown that he has made any attempts to obtain it through administrative channels at the facility where he

is incarcerated. Plaintiff has also failed to show the need for these records. As stated, the constitutionality of the statute is not dependent upon, or affected by, statements that members of Congress may have made concerning its purpose.

Lastly, plaintiff moves to certify a nationwide class composed of all prisoners who would be eligible for Pell Grants were it not for the Violent Crime Control Act. Although my dismissal of the complaint renders this motion moot, I would deny the motion in any event. In seeking to certify a class action, plaintiff bears the burden of establishing that the action satisfies the requirements of Fed. R.Civ.P. 23. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Plaintiff has failed to do so here. His representations concerning the nature and size of the class are conclusory, and he has not demonstrated the need to maintain this case as a class action.

Moreover, the Second Circuit has held that a district court may deny a motion to certify a class where the prospective benefits of declaratory and injunctive relief would benefit all members of proposed class to such an extent that class certification would not further implementation of the judgment. *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978). The archetype for application of this so-called "non-necessity" doctrine is an action seeking declaratory or injunctive relief against state officials on the ground that a statute or administrative practice is unconstitutional. *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). Thus, class certification is not warranted in this action.

### CONCLUSION

Defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted (Item 18) is granted, and the complaint is dismissed.

Plaintiffs' motions for a preliminary injunction (Item 3), for class certification (Item 10), and for oral argument (Item 22) are denied.

IT IS SO ORDERED.